**Thomas William MITCHELL and Helen Mitchell**

v.

**W.S. CUMBY & SON, INC.**

**Civ. A. No. 88–0613.**

United States District Court,
E.D. Pennsylvania.

Jan. 3, 1989.

Richard C. Ferroni, Philadelphia, Pa., for plaintiff.

Donald Applestein, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This matter comes before the court on defendant's Motion for Summary Judgment. The action arises out of plaintiff's suffering personal injuries during the course of his employment. For the reasons stated below, after hearing oral argument, defendant's motion will be granted.

### FACTS

On September 21, 1985, CIB Associates ("CIB") hired defendant W.S. Cumby & Son, Inc. ("Cumby") as general contractor for the reconstruction of the Cast Iron Building. (Complaint ¶ 6). Pursuant to its contract with CIB, Cumby subcontracted with RVS, Inc. ("RVS") for labor, material, and equipment for some of the demolition and rehabilitation work of the Cast Iron Building. (Contract at Defendant's Exhibit E). To discharge its contractual responsibilities, RVS brought several employees to the worksight, including plaintiff Thomas Mitchell.

On March 28, 1986, while in the course of his employment, plaintiff allegedly fell in a stairwell and sustained personal injuries. (Complaint ¶ 7). As a result, plaintiff allegedly incurred medical expenses and experienced lost wages. (Defendant's Exhibit A at Interrogatory 3). Plaintiff brought this action to recover for his losses.

### DISCUSSION

Defendant argues that we should grant its motion for summary judgment because under the Pennsylvania Workmen's Compensation Act it qualifies as a statutory employer. As a statutory employer, defendant is immune from suit by a statutory employee; the employee's exclusive remedy is through Workmen's Compensation. Thus, defendant argues, we should dismiss plaintiff's action.

Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* 106 S.Ct. at 2511. However, if the evidence is merely "colorable" or is "not significantly probative", summary judgment may be granted. *Id.*

In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essen-

tial to that party's case." *Id.* 106 S.Ct. at 2552–53; *Anderson, supra*, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra*, 106 S.Ct. at 2513.

Jurisdiction in this case is based on 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $10,000. When federal courts sit in diversity cases, they must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties have agreed that we should apply Pennsylvania law. While we look to the Pennsylvania Supreme Court for authority on a substantive issue, where that court has not faced an issue, we may predict how it would decide the issue if it confronted it. *See Rabatin v. Columbus Lines*, 790 F.2d 22, 24 (3d Cir.1986) (citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981)).

The liability of an employer to an employee under the Workmen's Compensation Act is exclusive of all other remedies. Pa. Stat.Ann. tit. 77 P.S. § 481(a) (Purdon Supp.1988).[1] Under § 203 of the Pennsylvania Workmen's Compensation Act, the employer of a subcontractor is statutorily the employer of the subcontractor's employees:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the extent as to his own employe. Pa.Stat.Ann. tit. 77 P.S. § 52 (Purdon 1952).

In *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294–95, 153 A. 424 (1930), the court outlined five elements necessary to establish the statutory-employer status which would allow an employer to avoid civil liability:

(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

Plaintiff concedes that defendant has satisfied its burden of proof with regard to elements one, three, and five. Plaintiff argues, however, that defendant has not shown element (2), that defendant occupied or controlled the premises, and element (4), that defendant entrusted part of its regular business to plaintiff's employer. We find no disputed material issue of fact with regard to either of the two requirements; therefore, as a matter of law, defendant is a statutory employer.

To satisfy element (2), the control or occupancy requirement, defendant need show that he *either* occupied *or* controlled the premises; he need not show both. *Zizza v. Dresher Mechanical Contractors, Inc.*, 358 Pa.Super. 600, 518 A.2d 302 (1986), *appeal denied*, 516 Pa. 643, 533 A.2d 714 (1987).

Plaintiff argues that to establish control, defendant must show that he exercised "ac-

---

**1.** The statute provides:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

tual" control over the premises. Plaintiff cites, *inter alia, Perma–Lite of Pennsylvania v. Workmen's Compensation Appeal Board,* 38 Pa.Commw. 481, 393 A.2d 1082 (1978) which holds that the mere right to control the premises is not sufficient to establish the control element of the *McDonald* test. In *Perma–Lite,* the court found that the defendant did not exercise actual control over the premises where it subcontracted the entire remodeling job and did not remain on the sight to supervise. The court distinguished the facts from *Annocki v. George Myers Co.,* 61 Pa. D. & C.2d 187 (1973) where the general contractor "physically occupied and controlled the premises through supervisory control." *Perma–Lite,* 393 A.2d at 1083. As we will more thoroughly discuss below, we find that the case at bar is in harmony with the situation *Perma–Lite* cites as satisfying the element of actual control; defendant Cumby assumed the requisite degree of supervisory control to satisfy this strict application of *McDonald.*

 Even if we were to find that defendant did not exercise "actual" control over the premises, Pennsylvania law suggests that defendant need only establish the right to control. In *Hayes v. Philadelphia Transportation Co.,* 312 F.2d 522, 524 (3d Cir.1963), the court, in applying Pennsylvania law, held that a general contractor was a statutory employer where it "had a continuing right of control" over the premises. *See also Cranshaw Construction, Inc. v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756, 758 (1981) (control established where general contractor was " 'more or less' the 'boss of the job site' "). *Jamison v. Westinghouse Electric Corp.,* 252 F.Supp. 710, 711 (1966), *aff'd,* 375 F.2d 465 (3d Cir.1967) ("The question of whether or not one is a statutory employer hinges upon the right of control."). In *O'Boyle v. J.C.A. Corp.,* 372 Pa.Super. 1, 538 A.2d 915 (1988), the court held that to determine whether a party is a statutory employer, one must look to the contractual arrangement between the general contractor and the owner. In *O'Boyle,* the court found the defendant a statutory employer where it contractually "assumed responsibility for

construction" of the project. *Id.* 538 A.2d at 918. Although *O'Boyle* involved the entrustment rather than the control element, we find that this analysis applies to the question of control; the right to control is sufficient to satisfy the control or occupancy element of *McDonald,* and to establish the general contractor's rights and responsibilities, courts should look to the contracts. *But see Wright Demolition & Excavating Company v. Workmen's Compensation Appeal Board,* 61 Pa.Commw. 479, 434 A.2d 232, 234 (1981) (actual control must be demonstrated; right to control insufficient); *Sears, Roebuck & Co. v. Fishel,* 6 Pa.Commw. 384, 295 A.2d 345, 348 (1972) (same). We find the Superior Court's reasoning in *O'Boyle* persuasive and predict that, if faced with the same issue, the Supreme Court would follow the *O'Boyle* approach.

Plaintiff also argues that to establish control, defendant must exercise direct control over the area in which the accident occurs. In support of this proposition, plaintiff cites *Colloi v. Philadelphia Electric Co.,* 332 Pa.Super. 284, 481 A.2d 616, 623 (1984) in which the court noted that the general contractor defendant "marked the spot" where the plaintiff was to perform excavation work which allegedly injured him. We find that the court did not require this direct control, but merely cited it as further support for their conclusion that defendant satisfied the control element of the *McDonald* test. We are persuaded by *Billante v. D.D. Davis Construction Co.,* 375 F.Supp. 120, 124 (W.D.Pa.1974) which holds that "to meet the control element it is not necessary that the employer actually be in direct, present supervision over the specific place where the accident occurred. It is sufficient if the employer had control or the right to control the area which encompassed the site of the accident."

 Viewing the facts in a light most favorable to the plaintiff, we find that defendant satisfies the control or occupancy element of *McDonald.* James Quigley, Superintendent for Cumby, testified that he supervised the work of the subcontractors;

he "supervised the whole operation." (Quigley Depo. at p. 5). (*See also* Cumby Depo. at p. 16). Quigley operated from an office in a trailer outside the building. (Quigley Depo. at p. 11). He was at the jobsight eight hours every day, and he frequently walked through the project to ensure that the job was proceeding satisfactorily. (Quigley Depo. at pp. 5, 30–31). In addition, Quigley testified that he directly supervised RVS employees. (Quigley Depo. at p. 13). Furthermore, the contractual arrangements among the parties provided for Cumby's supervisory role and responsibility for the entire project. Section 2.2.1 of the contract between Cumby and CIB provided that Cumby was responsible for "Project Control" which required that Cumby "monitor the work of the trade contractors and coordinate the work with the activities and responsibilities of the owner." (Defendant's Exhibit C). These facts clearly establish that Cumby controlled or occupied the premises.

While defendant virtually conceded element (4), the entrustment element, at oral argument, we will nevertheless address the merits of this issue. The question is whether the demolition, rehabilitation, and carpentry work performed by RVS was a part of Cumby's regular business. This element is generally satisfied "wherever the subcontracted work [is] an obligation assumed by a principal contractor under his contract with the owner." *O'Boyle*, 538 A.2d at 917. *See also Jamison v. Westinghouse Electric Corp.*, 375 F.2d 465, 468 (3d Cir.1967); *Werner v. Big Sky Shop*, 630 F.Supp. 444, 447 (E.D.Pa.1985); *Pape v. Smith*, 227 Pa.Super. 80, 323 A.2d 856 (1974). *But see Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 231 A.2d 894 (1967) (obligations assumed under contract do not affect status under Workmen's Compensation Act). Thus, Cumby is a statutory employer if it contracted with CIB to do rehabilitation work which Cumby then in part or in whole subcontracted to RVS.

In *O'Boyle*, the contract between the owner and the defendant general contractor is strikingly similar to the contract at issue in this case. In both cases, the owner assigned responsibility to the general contractor for completion of the entire project. (*See* Defendant's Exhibit C); *O'Boyle*, 538 A.2d at 918. Both contracts established that "the Construction Manager shall provide leadership to the construction team on all matters relating to construction." Both contracts also provided that "all portions of the work that the Construction Manager does not perform with his own forces shall be performed under Trade Contracts." *Id.* In addition, in the instant matter, the uncontroverted testimony of James Quigley demonstrates that Cumby specifically assumed responsibility for all the work involved in renovating the Cast Iron Building. (Quigley Depo. at p. 16). With almost identical testimonial evidence, the *O'Boyle* court concluded that the contractual arrangement, along with the testimony supporting the supervisory role of the defendant, established as a matter of law that the general contractor was a statutory employer.

 In addition to the evidence suggesting that Cumby contractually assumed responsibility for all aspects of the project, the evidence also establishes that Cumby was itself in the business of performing the kind of work it subcontracted to RVS. When plaintiff was injured, he was doing carpentry work. According to the depositions of James Quigley and William Cumby, carpentry was part of Cumby's regular business. (Quigley Depo. at p. 10); (Cumby Depo. at p. 6). This evidence, in combination with the contractual evidence, clearly establishes that Cumby entrusted part of its regular business to RVS.

Plaintiff also argues that defendant is not a statutory employer because the Workmen's Compensation Act was not intended to immunize a defendant where he has contractually required his subcontractor to carry workmen's compensation insurance. Plaintiff argues that this allows a defendant to "have his cake and eat it too": Defendant does not have to carry worker's compensation insurance, yet it enjoys immunity from common law suit. The Pennsylvania Supreme Court, however, has expressly rejected this argument. *See Cap-*

*ozzoli v. Stone & Webster Engineering Corp.*, 352 Pa. 183, 188, 42 A.2d 524 (1945). *See also O'Boyle*, 538 A.2d at 919; *Bartley v. Concrete Masonry Corp.*, 322 Pa.Super. 207, 469 A.2d 256, 259 (1983); *Cranshaw Construction Inc.*, 434 A.2d at 760–61.

Having carefully reviewed the record, and having considered the oral arguments of counsel in the instant case, we conclude that there is no genuine issue of material fact as to Cumby's status; Cumby is a statutory employer. Therefore, defendant's motion for summary judgment is granted.